McKenna et al., Appellants, *v.* Art Pearl Works, Inc.

Argued June 13, 1973. Before WRIGHT, P. J., WAT-KINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Elizabeth M. McKenna,* in propria persona, for appellants.

*Saul Levit,* with him *Abrahams & Loewenstein,* for appellees.

OPINION BY HOFFMAN, J., September 19, 1973:

Appellants contend that the trial court erred in granting appellees' motion for summary judgment on the amended complaint.

The instant suit arose out of an accident occurring on December 10, 1969, in which the wife-appellant sustained injuries while operating a punch press in the course of her employment at the Adelphia Button Company. The punch press had been purchased from the Art Pearl Works, Inc., through its authorized agent

Bernard Dorfmann. Appellants filed their Complaints in Trespass and Assumpsit against the appellees, Art Pearl Works, Inc., and Bernard Dorfmann individually. Appellees' motion for summary judgment as to appellants' second amended complaints, was granted on January 30, 1973, by the Honorable Ned L. HIRSH of the Court of Common Pleas of Philadelphia, who based his decision on the deposition of the individual appellee, appellees' affidavit, and the pleadings. Appellants appeal to this Court questioning only those portions of the lower court's order granting summary judgment in favor of the appellees on the second amended complaint in trespass.

A summary judgment may be sustained only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa. R. C. P. 1035(b). "The burden of demonstrating that no genuine issue of material facts exists is on the moving party and the record must be examined in the light most favorable to the nonmoving party. *Schacter v. Albert,* 212 Pa. Superior Ct. 58, 239 A. 2d 841 (1968). . . . In passing upon a motion for summary judgment, the trial court's function is not to decide issues of fact, but solely to determine whether there is an issue of fact to be tried. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *McFadden v. American Oil Co.,* 215 Pa. Superior Ct. 44, 48-49, 257 A. 2d 283 (1969).

The issue, therefore, is whether the appellants raised any genuine issues of material fact to negate the propriety of summary judgment on their amended complaint.

Plaintiffs' Complaint in Trespass sets forth with sufficient clarity and definiteness the identity of the

parties, the circumstances of the sale of the punch press to wife-plaintiff's employer, and the injury on December 10, 1969. Plaintiffs' allegations state causes of action based on strict liability in tort and common law negligence.[1] In their Motion for Summary Judgment, defendants admit to the sale of the punch press and the resulting injury. They deny, however, that they are liable to the plaintiffs on a strict liability theory. We agree.[2] Defendants go further, however, and deny liability on any other tort theory. They deny corporate liability, saying that the corporation had ceased doing business in 1964 after a sale of its business assets. Likewise, individual liability is denied, as it is alleged that Bernard Dorfmann at all times acted as an authorized agent for the corporation.

We believe the lower court properly granted the Motion for Summary Judgment with respect to Bernard Dorfmann. Despite the fact that Mr. Dorfmann admitted that he was the president of Art Pearl Works, Inc., and that the corporation was a family business with the shares of stock divided among various family members, we are not persuaded that this is an appropriate case to pierce the corporate veil, as appellants would have us do.

---

[1] Plaintiffs allege that defendants sold to the Adelphia Button Company a punch press in a defective condition. They set forth, inter alia, that defendants were negligent in that they failed to exercise reasonable care by "selling the said press to her employer knowing or having reason to know that the press was or was likely to be dangerous when used by the plaintiff, a person for whose use it was supplied."

[2] In their Motion for Summary Judgment, defendants point out that Art Pearl Works, Inc. was a button manufacturer, as was the Adelphia Button Company. As such, defendant was not in the business of selling punch preses. Strict liability in tort under §402A of the Restatement of Torts (2d) does not attach to a "seller" unless it is in the business of selling said product.

Under the law, there is no authority to look through the corporate appellee to the individual appellee. We have said that the "equitable doctrine of piercing the corporate veil [should be employed] to prevent the perpetration of wrong; to prevent its use as a shield for illegal and wrongful conduct; or where its use, as a technical device, brings about injustice or an inequitable situation so that justice and public policy demand it be ignored. However, we have not done so where the rights of innocent parties are involved and the corporation is used for a legal purpose, as otherwise the entire theory of the corporate entity would be made useless." *Price Bar, Inc. Liquor License Case*, 203 Pa. Superior Ct. 481, 484, 201 A. 2d 221 (1964).

In the instant case, the evidence discloses that the corporate appellee, in an effort to terminate its business operations, sold all its corporate assets. There is absolutely no evidence or averment of fraud, criminal conduct, or other *ultra vires* activity on the part of the corporate appellee in any of these transactions. Absent evidence that said corporation was being used for some illegal purpose, we cannot say that the mere fact that appellee sold a defective machine, which subsequently injures an employe of the buyer, would justify holding the selling agent personally liable. The fact that stock is closely held or even held by one stockholder should not, in itself, alter the proposition that the corporation is distinct from its shareholders. *Brown v. Gloeckner*, 383 Pa. 318, 118 A. 2d 449 (1955) ; *Homestead Boro. v. Defense Plant Corp.*, 356 Pa. 500, 52 A. 2d 581 (1947).

As for the liability of the corporate appellee, we take a different position. While it is true that §402A liability may not be imposed in the instant case (see footnote 2), plaintiffs, in their Answer and Memorandum contra defendants' Motion for Summary Judgment, aver that defendants' denial of liability is conclusory, and that a cause of action based on common law negli-

gence is sufficiently stated and proved to sustain their Complaint.

Plaintiffs allege in their Second Amended Complaint that defendants sold and supplied a defective punch press knowing or having reason to know of its unreasonably dangerous condition; reasonably foreseeing that an employee, such as the plaintiff, would use the product ignorant of its dangerous condition; in failing to warn or correct the dangerous condition; and, knowing or having reason to know that said product could not be made safe for use by the plaintiff.

Under the Restatement of Torts (2d) and our decisional law,[3] plaintiffs' Complaint raises material issues

---

[3] Section 388 of the Restatement of Torts (2d), reads as follows: "§388. *Chattel Known to Be Dangerous for Intended Use.* One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

Section 389 provides: "§389. *Chattel Unlikely to Be Made Safe for Use.* One who supplies directly or through a third person a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability for physical harm caused by such use to those whom the supplier should expect to use the chattel or to be endangered by its probable use, and who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent, although the supplier has informed the other for whose use the chattel is supplied of its dangerous character."

Section 392 states: "§392. One who supplies to another, directly or through a third person, a chattel to be used for the supplier's

of fact, which if read in a light most favorable to the plaintiffs, and if proven would form sufficient basis for recovery on principles of common law negligence. Having supplied an allegedly defective product t o wife-plaintiff's employer, the corporate appellee, Art Pearl Works, Inc., is subject to liability for tortious conduct resulting in wife-plaintiff's injury. Appellants should be permitted to proceed with discovery and, if tenable, to trial.[4]

For the reasons stated above, we reverse the order of the lower court granting the *corporate* appellee's motion for summary judgment on the Second Amended Complaint in Trespass, and remand for further proceedings In all other respects, the order of the lower court is affirmed.

---

business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it." See also, *Fullard v. Urban Redevelopment Authority of Pittsburgh*, 222 Pa. Superior Ct. 184, 293 A. 2d 118 (1972).

[4] The corporate appellee argues that it cannot be held liable to the appellants as it no longer exists as a corporate entity. Despite the production of a verification from the New Jersey Department of State indicating that it remains an active corporation, the appellee contends that its failure to pay corporate taxes for three consecutive years automatically voids its corporate standing. 17 N.J.S.A. §7-122. We do not believe a corporation may escape liability to litigants or other creditors by automatic extinction, without either formal proceeding or legal notice. The mere sale of the corporate assets is not a dissolution of the corporation. *Levin v. Pittsburgh United Corp.*, 330 Pa. 457, 199 A. 332 (1938).